John J. Carty and Pauline E. Carty v. Commissioner.
Carty v. Commissioner
Docket No. 25257.
United States Tax Court
1951 Tax Ct. Memo LEXIS 216; 10 T.C.M. (CCH) 533; T.C.M. (RIA) 51157; May 31, 1951
*216 Richard W. Wilson, Esq., 74 Trinity Place, New York 6, N.Y., for the petitioners. Frank Cohen, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $164.52 in petitioners' income tax for 1945. Petitioners now claim that they have overpaid their tax for that year by the amount of $768.50. They contend that the respondent erred in disallowing various deductions claimed in their return, including taxes, medical expenses, automobile expenses, cost of equipment, entertainment expenses and contributions to charities. In their petitioner herein petitioners claim additional contributions of $105 to American Red Cross, Tuberculosis Fund, Cancer Drive, Infantile Paralysis Fund and "other miscellaneous organized charities." They also claimed $200 depreciation on an automobile which was not claimed in the return. By an amendment to their petitioner filed after the hearing, they claimed a dependency exemption of $500 for Anne Haeussler, mother of petitioner Pauline E. Carty. Findings of Fact Petitioners are husband and wife and are residents of the Bronx, New York. They filed a joint income tax return for *217 1945 with the collector of internal revenue for the 14th district of New York. John J. Carty, hereinafter referred to as the petitioner, has been employed by Walter B. Cooke, Inc., morticians of New York, New York, since he started with the firm as an embalmer at a salary of $25 per week. He still does some embalming but also serves at times as funeral director, and is assistant manager. He also sells caskets and certain types of funeral services on a commission basis. He reported total compensation from Walter B. Cooke, Inc., in 1945 of $5,034.63, including salary of $3,729.63 and commissions of $1,305. He reported dividends and interest of $1,063.65 and capital gains of $39.52, making a total income of $6,137.80. He claimed deductions in his return as follows: Contributions
St. Nicholas of Tolentine Church
$ 750.00
Taxes
New York City sales tax
$ 10.00
New York City admissions tax
15.00
25.00
Medical Expenses
Accident insurance
40.00
Anne Haeussler, 1945, for medical and doctor's expenses, $5 weekly
260.00
[Here follows a list of payments to specified doctors] in total amount of
205.00
Cancer hospital
5.00
Brevoot Pharmacy
59.00
Thrift Drug Store
29.89
Dolan's Pharmacy
13.00
$ 611.89
Less 5% of Item 5, page 1
306.89
305.00
Miscellaneous
Depreciation 5th year on 1941 Chevrolet
Repairing said car [itemized]
$ 164.70
Insurance, above car
63.16
Garage and parking
108.00
License plates and stamp tax
21.00
[Total car expenses]
$ 356.86
Replacement of embalming instruments
$ 75.00
Union dues
39.00
Embalmer's licenses
16.00
Professional magazines
20.00
[Total embalmer's expenses]
$ 150.00
Cost of parties
$ 375.00
Dinners and luncheons
150.00
Tickets to prize fights
100.00
Cigars and cigarettes
30.00
Baseball games75.00
Liquors
200.00
Night clubs
100.00
[Total entertainment expenses]
$1,030.00
Professional dress, repair and replacement
$ 140.00
Embalmer's gowns
30.00
[Total clothing expense]
$ 170.00
Total miscellaneous deductions
1,706.86
Total deductions claimed
$2,786.86
*218 The following note appears at the foot of the deductions schedule attached to the return: "The above items are reflected in my increased salary and Commission." In his audit of the return the respondent allowed $865 and disallowed $1,921.86 of the deductions claimed on the return, as follows: Dis-
Allowed
allowed
Contributions
$300.00
$ 450.00
Taxes
10.00
15.00
Medical expenses $311.89
Less 5% limitation 306.89
5.00
300.00
Miscellaneous deductions
550.00
1,156.86
$865.00
$1,921.86
Petitioner works for Walter B. Cooke, Inc., under a verbal agreement. He observes regular working hours but remains "on call" twenty-four hours a day and "sleeps by the telephone." He lives in a two-room apartment within one block of his place of business. Early in his employment with Walter B. Cooke, Inc., petitioner "made a note" that he was "going to the top." He has always kept that resolve firmly before him. He now holds a mortician's license in New York, New Jersey, Massachusetts, and the District of Columbia. He attends the morticians' conventions held in these territories for the purpose of making acquaintances among the morticians and casket makers *219 and promoting his own, as well as his employer's, interests. His employer does not require him to do so, however, and does not defray his expenses. Petitioner maintained an automobile which he used in his business. It was a 1941 Chevrolet which he purchased in that year. Petitioner's employer furnished him gas and oil without charge but bore none of the other expenses of operating the automobile. Petitioner took depreciation on the automobile in his returns for the years prior to 1945. In 1945 petitioner paid a New York State income tax of $11.47. Petitioner and his wife belong to St. Nicholas of Talentine Church and regularly attend services there. Petitioner attended several mortician conventions during 1945 which were held in New York, Massachusetts, and New Jersey. He paid his own expenses while attending those conventions. He did considerable entertaining, at his own expense, while attending the conventions and also, from time to time, at his home. He also took guests when he considered important business contacts to lunch occasionally and ball games, prize fights, night clubs, and other places of amusement. He sometimes made them gifts of cigars and other favors. Each *220 week during 1945 petitioner's wife sent or gave to her mother, Anne Haeussler, a check for $5. Her mother was a widow of about 70 years of age residing in Montague City, Massachusetts. She owned her own home but had no income or any substantial means of support. She had a son, also living in Massachusetts, who contributed to her support. Petitioner was required to purchase and did purchase during 1945 certain equipment and attire which he used exclusively in his business. Petitioner incurred and paid certain medical expenses on behalf of himself and his wife during 1945. Opinion LEMIRE, Judge: This case presents another of these troublesome situations where a taxpayer comes before us relying upon little more than his unsupported testimony to establish his right to various disallowed deductions, running all but the full gamut of statutory allowances. The fact that no tangible proof may have been available on some of the items does not lessen the difficulty placed upon us of having to choose between believing or disbelieving the taxpayer's sworn statements. To say in such circumstances that a taxpayer has or has not met his burden of proof is merely another way of saying that *221 we believe or do not believe his testimony. Actually, the uncorroborated testimony of the taxpayer that he contributed certain amounts of cash to various charities and spent certain amounts in entertaining business prospects and spent certain amounts for business purposes and contributed the major portion of the support of a dependent is but little help to the Court in deciding the case. His testimony merely reiterates the statements which he has already sworn to in his return. Where, as in this case, the respondent, for reasons which he deemed sufficient, has disallowed numerous deductions claimed in the return, the burden of proof rests heavily upon the taxpayer to establish his right to the deductions. See . In the absence of dependable records or other tangible proof he must rely upon convincing this Court by his demeanor on the witness stand, or otherwise, that his return was made in good faith and with reasonable accuracy. This the taxpayer here has failed to do. He was the only witness to testify. His attitude was anything but reassuring to the Court that he regarded seriously his obligation to make an honest and accurate *222 return of his income to the Government. He testified as to his entertainment expenses during the 1945 morticians' convention in New York: "I blew three hundred bucks of the stuff you are going to talk about now there, I think." As to his at home entertainment expenses he testified: "Well, we would have some people in from the neighborhood and have some friends that my wife made. You know, she would meet people and they would introduce her to other people, and they were only for getting business." First, the petitioner testified that he never went to ball games except when he had to take care of people in his business but later he admitted that he liked ball games and prize fights and went whenever he could and that he got into the habit of going down to Madison Square Garden whenever there was a good fight. Petitioner made frequent reference to a diary and memorandum allegedly kept by his wife which he used in making their return, but later destroyed. They had kept the memorandum, he stated, "Because I felt some day I would be sitting right where I am sitting." Petitioner's testimony that he used his automobile 100 per cent for business is somewhat consistent with his position *223 that everything he did was for a business purpose. He admitted using the automobile to take friends to ball games and to visit his wife's mother in Massachusetts. When asked if he did not do any personal driving whatever he replied: "If I have to - if I have a day off, I have an evening off, but I am the fellow that calls the office to see what is going on, and many a time I take off from wherever I am, and I am prepared at all times, sir." Actually, the respondent allowed $200 of the $356.86 of automobile expenses claimed by petitioner in his return. Certainly no greater allowance is justified on the evidence before us. Nor is the depreciation on the automobile, claimed for the first time in the petition, allowable. Petitioner has not shown either the cost of the automobile, a 1941 two-door Chevrolet, or the depreciation taken in prior years. He first testified that it cost $1,450 but later admitted that that might be too much and that "The price today may be throwing me off on that." He testified that depreciation was taken in 1941, 1942, 1943 and 1944, but did not show at what rate or in what amounts. For all we know the automobile may have been fully depreciated by 1945. See *224 Bureau Bulletin "F" (rev. Jan. 1942), p. 52. While the petitioner states on his return that the deductions claimed, presumably for entertaining expenses, were "reflected in my increased salary and Commission," he does not show what his salary or commissions were in prior years or how much they may have increased because of the expenditures, nor does he show just how these expenditures affected either his regular salary or his commissions. It might be noted that the amount claimed for entertainment, $1,030, was almost as much as his commissions for that year, $1,305. The respondent has allowed $550 of the $1,706.86 claimed under the heading "Miscellaneous" deductions, including car expenses, embalmer's expenses, entertainment expenses, and clothing. We do not have a breakdown of the separate items allowed and disallowed, but, in any event, the sum total of the items satisfactorily proven does not exceed the amount which the respondent has allowed. Petitioner claimed the deduction of New York City sales taxes of $10 and admission taxes of $15. Respondent allowed the $10 and disallowed the $15. However, petitioners now concede that the $15 item was erroneous but claim that they paid *225 New York State income taxes of $11.47, and the respondent concedes the deductibility of that amount. Of the $611.89 of medical expenses claimed in the return, the respondent allowed $306.89 (subject to the 5 per cent statutory limitation) and disallowed $300. The amount disallowed consisted of $260 which petitioners claimed as medical expenses of Anne Haeussler and the $40 claimed for health and accident insurance. On proof of the cost of the health and accident policy respondent now agrees to its inclusion in the medical expenses. Petitioner produced canceled checks showing payments to Anne Haeussler of $5 per week throughout 1945, except for one week, but there is no evidence as to what this money was used for or intended for. In any event, petitioner now concedes that the $260 item was correctly disallowed as medical expenses but claims that it was a part of the total amount of $600 which he and his wife contributed for Anne Haeussler's support. He claims that other cash and clothing were given to her from time to time which made up her chief support. Petitioner admitted that her son who lived in Massachusetts also contributed to her support. His statement was: "She has a son, *226 and from what I gather he also takes care of her from about $200, $225 a year, about." When asked why he did not claim the exemption for his mother-in-law in his return petitioner replied: "Well, I have maybe inquired from friends, and I did not put it in there because I figured that my wife's brother is kicking in there, and I did not want to have any trouble and I said let it ride, to heck with it." The evidence before us fails to show that Anne Haeussler was a dependent of the petitioners. Petitioner's testimony as to the other items in controversy was equally vague and unconvincing. For instance, he testified that he and his wife gave $750 cash ( $10 every week for 52 weeks), plus other contributions, to their church, without having any record of the matter and without anyone knowing of it; that, too, notwithstanding the fact that he was expecting to have trouble with his income tax return. Additional contributions of $105 to various charities not claimed on the return have been claimed in the petition. When asked why they were not included in the return petitioner replied: "Because I figured that I did not want any of this rigmarole and any of this trouble I got here, but *227 when I got it I put everything down there now." Further discussions of the separate items claimed and of petitioner's testimony regarding them would serve no useful purpose. We have examined all of the evidence and it is our opinion that except as above stated petitioners have not proven their right to any greater deductions, or exemptions, than those allowed by the respondent. Decision will be entered under Rule 50.